UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TIMOTHY HIXON,                )
                              )
        Plaintiff,            )
                              )
                              )
v.                            )    No. 3:08-CV-288
                              )    (VARLAN/SHIRLEY)
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
        Defendant.            )

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 9 and 10] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Timothy Hixon seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 21, 2004, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, claiming disability as of December 1, 2001. [Tr. 17]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On July 5, 2007, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 17]. On August 16, 2007, the ALJ found that Plaintiff was

not disabled. The Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

I.   **ALJ FINDINGS**

>The ALJ made the following findings:
>
>1. The claimant met the insured status requirements of the Social Security Act through March 31, 2005.
>
>2. The claimant has not engaged in substantial gainful activity since December 1, 2001, the alleged onset date (20 CFR 404.1520(b), and 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
>3. The claimant has the following "severe" combination of impairments: degenerative disc disease of the lumbar spine with a fusion from L4-S1 levels; mitral valve prolapse; and major depression (20 CFR 404.1520(c) and 416.920(c)).
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work and will be able to complete simple and some detailed tasks and sustain persistence on repetitive, routine activities requiring limited contacts with the public, will accept supportive criticism from supervisors and counselors, will need assistance setting realistic goals. He should do [no] more than occasional climbing of ramps or stairs and no climbing of ropes, ladders or scaffolds. He should be able to sit and stand as necessary for comfort, staying in one position no more than 30 minutes continuously.
>
>6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>7. The claimant was born on November 23, 1968 and was 33 years

old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), and 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act from December 1, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 19-25].

## II.  DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.   STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of

4

Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    ANALYSIS**

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by: (A) discounting the opinion of Donald Douglas, M.D., and (B) discounting the opinion of Robert Spangler, Ed.D. As a result of improperly discounting these opinions, the Plaintiff contends that the ALJ overestimated his physical and mental abilities in making the residual functional capacity ("RFC") determination. [Doc. 10 at 9, 15]. The Commissioner, in response, contends that the ALJ did not err by discounting these opinions, that he properly stated his reasons for doing so, and that substantial evidence supports the ALJ's disability determination. [Doc. 14 at 13, 14, 19, 20].

5

### A. Donald Douglas, M.D.

As previously stated the Plaintiff argues that the ALJ erred by discounting the opinion of Donald Douglas, M.D., ("Dr. Douglas") and claims that the ALJ failed to give "good" reasons for discounting the opinion, as required by 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The findings and opinion, which the Plaintiff believes should have been accorded additional weight, are found in a document entitled "Lumbar Spine Residual Functional Capacity Questionnaire," [Tr. 467-71], that was provided to Dr. Douglas by Plaintiff's counsel and completed on June 26, 2007.[1]

The form supplied areas for the physician to discuss diagnoses, clinical findings, and symptoms, and included yes/no questions, short answer questions, and a serious of scales on which the physician could mark or circle the term that best described the Plaintiff's remaining capacity. In filing out the lumbar questionnaire, Dr. Douglas provided a number of generic citations as the clinical findings to support his assessment ("C-spine MRI, neurology, Dr. Adams's neuro exam, physical exam and physical findings consistent with left radiculitis, x-rays of post-op internal fixation of lumbar spine, L-spine MRI, and C-spine MRI dated March 2007").[2] [Tr. 467].

---

[1] The Plaintiff's date last insured was March 31, 2005. Thus, this questionnaire was completed almost two years after the date last insured. However, based upon Dr. Douglas's statement that the Plaintiff had received treatment at Bearden Healthcare for three years and three months, the Court will assume that his opinions and observations pertain, at least in part, to the period during which the Plaintiff was insured, as is required for it to be considered in the disability determination. See Wirth v. Comm'r of Soc. Sec., 87 Fed. Appx. 478, 480 (6th Cir. 2003) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.")

[2] The Commissioner maintains that the evidence cited such as "Dr. Adam's neuro exam," were not provided to the ALJ and, as a result, cannot be considered objective evidence supporting the decision. [Doc. 14 at 16]. The Plaintiff admits that some of the cited materials were not included in the record, but argues that the ALJ had a duty to obtain the records and should not discount the opinion where he failed to obtain the records. [Doc. 10 at 15]. The Commissioner counters that the ALJ had no duty to make a further inquiry about the underlying records because the ALJ did not find the opinion to be ambiguous or in need of further clarification. [Doc. 14 at 16 n. 3]. The Court recognizes that 20 C.F.R. §§ 404.1512(e) and 416.912(e), impose a duty on the ALJ to fill in gaps in the treatment record. However, the ALJ in

In explaining the weight accorded to Dr. Douglas's findings, the ALJ stated:

> Dr. Douglas submitted a medical source statement and listed residual functional capacity limitations commensurate with an inability to perform even unskilled sedentary work, or ANY substantial gainful activity on a sustained basis. By limiting the claimant to a wide range of sedentary work, the undersigned has taken into consideration the reasonable parts of the medical source statement from Dr. Douglas.
>
> [However, the] doctor's own reports fail to reveal the significant clinical and laboratory abnormalities one could expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. The doctor's report appears to contain inconsistencies, and the doctor's opinion is accordingly rendered less persuasive. While the doctor does have a treating relationship with the claimant, the treatment history is quite brief and the record reveals that actual treatment visits have been relatively infrequent. The doctor's opinion appears to rely in part on the assessment of an impairment(s) for which the claimant received no treatment from that doctor. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.

[Tr. 21]. The ALJ also explained that in discounting Dr. Douglas's opinion he had considered whether it was consistent with the evidence of record, pursuant to 20 C.F.R. §§ 404.1529 and

---

this case received the entire treatment record from Bearden Healthcare along with the records of the Plaintiff's 2003 back surgery from the Fort Sanders Neurosurgical Clinic [Doc. 339-361].

The Plaintiff cites the Court to Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), a case in which the Court of Appeals for the Fifth Circuit determined that an ALJ had not fulfilled the obligation to obtain complete records. However, in Newton, the Court found that the "ALJ was faced with what she deemed an incomplete medical history," id. at 458, whereas the ALJ in the present case found that Dr. Douglas's report did not reveal abnormalities that would produce the severe restrictions he identified and that the restrictions were not consistent with other evidence in the record— he did not find that he was faced with an incomplete medical history. In contrast to Newton, there was no identifiable gap in the record in this case. The ALJ received all pertinent records from Dr. Douglas, Bearden Healthcare, the Plaintiff's neurosurgeon, and a number of primary care physicians he had seen. Further, the Court in Newton noted that a plaintiff must demonstrate that a failure to request records has resulted in prejudice. In the instant case, the Plaintiff has failed to demonstrate that any additional pertinent records exist and, further, has failed to demonstrate that in these records would have undermined the substantial evidence in support of the ALJ's decision, detailed below.

Thus, the Court finds that the ALJ did not fail to comply with 20 C.F.R. §§ 404.1512(e) and 416.912(e), and that the Plaintiff has failed to demonstrate threshold prejudice.

7

416.929 and SSRs 96-4 and 96-7. [Tr. 21].

As a rule, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(d)(2) and 416.927. The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient. Id. Furthermore, as a result of the treating physician's duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. Id. (citing Schisler v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986)). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ, id. (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)), and accordingly, the

ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth a basis for rejecting it. See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant."))

In the present case, Dr. Douglas had a treating relationship with the Plaintiff, although it appears that other physicians in the Bearden Healthcare Associates ("Bearden Healthcare"), specifically Frank McNiel, M.D., ("Dr. McNiel"), provided the vast majority of treatment to the Plaintiff. While the notes from the Plaintiff's visits at Bearden Healthcare are extremely difficult to decipher [Tr. 370-83, 418-66], the signature that appears at the bottom of these pages appears to be "McNiel" and is certainly distinguishable from Dr. Douglas's signature as it appears on the lumbar questionnaire, [Tr. 471]. A treating physician is one who has provided medical treatment as part of an ongoing treatment relationship. See 20 C.F.R. § 220.5. While the Court believes that it is more appropriate to classify Dr. McNiel as the Plaintiff's treating physician, the Court will also consider Dr. Douglas a treating physician. Nonetheless, and as the ALJ explained in his decision, Dr. Douglas's opinion may be discounted to reflect the limited extent of his relationship with the Plaintiff.

The ALJ also noted that visits to Bearden Healthcare that involved actual treatment have been relatively infrequent. Dr. Douglas reported that the Plaintiff was in monthly contact with the office, [Tr. 467], and the Plaintiff treats this comment as evidence that Dr. Douglas "treated the Plaintiff on a monthly basis," [Doc. 10 at 14]. Through 2004 the Plaintiff appeared to make

9

monthly visits to Bearden Healthcare. However, throughout 2005 and 2006, the Plaintiff saw Dr. McNeil bi-monthly, and the records of many of these visits indicate that no physical examinations were conducted, [Tr. 372-74, 421, 423, 425, 432, 435, 440, 443, 446, 453, 455, 459, 461, 463, 465, and 466]. The fact that visits were conducted five-six times a year, rather than monthly, is pertinent, but not a fact that alone would weigh heavily on the determination. However, when coupled with the fact that even at the bi-monthly visits objective, physical observations and findings were rarely made, these circumstances undermine Dr. Douglas's opinion.

Finally, the ALJ correctly observed that the extreme restrictions contained in the lumbar questionnaire were not consistent with the evidence in the record. First, the restrictions were inconsistent with the medical treatment records including those of Richard Boyer, M.D., the Plaintiff's treating neurosurgeon, who observed in 2004 that post-operatively the Plaintiff was "coming along fine." [Tr. 340]. Further, Celia Gulbank, a state agency reviewing physician, concluded that the Plaintiff retained a range of light work after reviewing the evidence in record on March 29, 2004. [Tr. 362-69].

Similarly, the Plaintiff's testimony at the hearing and his reports of activities to examiners and physicians were not consistent with an inability to complete sedentary work. At the hearing before the ALJ, the Plaintiff stated that he: drove twice a week [Tr. 515]; was able to fish from a bank [Tr. 519]; went squirrel or deer hunting in 2003 or 2004 [Tr. 520]; remained a deacon at his church, although in a less active capacity [Tr. 521]; and was able to act as an usher or complete collections in a church service within a year of the hearing [Tr. 522]. At a May 24, 2005, visit to Bearden Healthcare and just six weeks after his date last insured, the Plaintiff reported that he had "signed up on disability" and had recently gone on a trip to Dollywood, although he only stayed

10

a "couple of hours." [Tr. 455].

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision to discount the findings and observations made by Dr. Douglas in the lumbar questionnaire. The ALJ correctly noted that Dr. Douglas had a very limited history of treating the Plaintiff, because he was almost always seen by another physician at Bearden Healthcare. Further, while the Plaintiff visited Bearden Healthcare five to six times per year, relatively few of the visits involved objective, physical examinations and most notes from these visits are memorializations of the Plaintiff's subjective complaints. Finally, the medical evidence in record, including the findings of other treating physicians and a reviewing physician, is inconsistent with Dr. Douglas's findings, as are the Plaintiff's own reports of his activities.

After review of the ALJ's decision, the Court also finds the ALJ gave "good" reasons for discounting the opinion and explained his decision so that both the claimant and reviewing courts could understand the basis of his decision to discount Dr. Douglas's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)

**B.     Robert Spangler, Ed.D.**

The Plaintiff also alleges that the ALJ erred by discounting the opinion of consulting examiner Robert Spangler, Ed. D., ("Dr. Spangler"). [Doc. 10 at 15]. Dr. Spangler completed a two hour examination of the Plaintiff on December 7, 2005, and issued a report, based on this consultation, which contained observations and opinions concerning the Plaintiff's mental impairments and abilities. [Tr. 408-417].

The ALJ did not give significant evidentiary weight to Dr. Spangler's statements or opinions, and he based his decision, in part, upon Dr. Spangler's use of an outdated form which

11

employed the adjectives good, fair, and poor, in place of the now-preferred descriptors mild, moderate, and marked. [Tr. 21]. The Court finds that the use of outmoded terms is not grounds for discarding the opinion altogether. However, it appears that the ALJ considered the opinion and did not wholly disregard it. Instead he noted that "fair," the term employed by Dr. Spangler, equated to "moderate" restriction, and incorporated Dr. Spangler's restrictions, to a degree, in his residual functional capacity determination.

In his report, Dr. Spangler found that the Plaintiff had generalized anxiety disorder and a nicotine dependence. [Tr. 412]. Dr. Spangler found the Plaintiff had low average intelligence, marginal educational reading and math skills, erratic concentration, and a slow pace. [Tr. 412]. Dr. Spangler assigned the Plaintiff a global assessment of functioning ("GAF") score of 55, which indicates only moderate symptoms. See American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (Text Revision) (DSM-IV-TR) (2000); White v. Comm'r Soc. Sec., 2009 WL 454916 (6th Cir. February 24, 2009). In addition, the ALJ found that the Plaintiff retained a good ability to follow work rules, use judgment in public, and interact with supervisors. [Tr. 415]. However, he found the Plaintiff had only a good-fair ability to function independently and a fair ability to relate to co-workers or deal with the public. [Tr. 415]. Finally, he found the Plaintiff had fair-poor ability to maintain attention and concentration. [Tr. 415].[3] Dr. Spangler also concluded the Plaintiff would need to be absent from work more than two days a month, based on his impairments. [Tr. 417].

---

[3]Thus if one transfers the limitations that were severe enough to weigh on the disability determination into the preferred terms, the results are as follows: Dr. Spangler found that the Plaintiff had moderate limitation in his ability to relate to co-workers or deal with the public and marked limitation in his ability to maintain attention and concentration.

The ALJ is required to determine the weight that should be accorded to a medical opinion, including consulting opinions by considering: whether the source examined the claimant; the treatment relationship, as discussed above; the supportability of the opinion; the consistency of the opinion with the evidence in the record; and the specialization of the source. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). In this case, Dr. Spangler was not a treating source and therefore is not entitled to the deference discussed previously in this report and recommendation. In contrast, Dr. Spangler's consultation and specialization strengthen his opinion, as he has actually observed the Plaintiff and made observations within his field. However, his findings and opinion must still be considered in light of other evidence of record, to determine whether it was supported by and consistent with the evidence.

In this case, Dr. Spangler's restrictive findings contradict the opinions of other consulting sources. First, Mary Barker, M.S., ("Ms. Barker"), and Candice Blake, Psy.D., ("Dr. Blake"), worked in conjunction to examine the Plaintiff on October 13, 2004, and produce a report evaluating the Plaintiff's psychological condition and mental status on October 19, 2004. [Tr. 384-89]. Ms. Barker and Dr. Blake found the Plaintiff had a mild impairment in his ability to understand and remember and in his ability to interact socially. [Tr. 388]. They also found he was moderately limited in his concentration, persistence, and adaptation. [Tr. 388]. Similarly, after reviewing the medical evidence in record, Ronald F. Kourany, M.D., ("Dr. Kourany"), in a report dated November 4, 2004, found the Plaintiff would be able to complete simple tasks and sustain persistence in routine activities that required only limited contact with the public. [Tr. 392].

Similarly, Dr. Spangler's restrictive findings regarding social interaction and persistence are not consistence with his reported activities. His testimony at the hearing, as highlighted earlier,

13

Case 3:08-cv-00288-TAV-CCS   Document 15   Filed 06/23/09   Page 13 of 15   PageID #: 92

indicated that his ability to interact socially allowed him to play an active role in his church, and he reported to Dr. Blake and Ms. Barker that he enjoyed attending his children's sports games and trips to Wal-mart, both of which require socializing and persistence. [Tr. 387].

Based on the foregoing, the Court concludes that Dr. Spangler's report is inconsistent with the ALJ's decision in a few of its findings–specifically, that the Plaintiff had moderate limitation in his ability to relate to co-workers or deal with the public, marked limitation in his ability to maintain attention and concentration, and need to be absent from work. However, in its overarching conclusions, such as the GAF score of 55 and low to average intelligence with a limited ability to concentrate, Dr. Spangler's report is not inconsistent with the restrictions the ALJ included in his residual functional capacity.

However, to the extent the ALJ discounted Dr. Spangler's report, the Court finds that there is substantial evidence in the record to support the ALJ's decision to discount the report, as it was inconsistent with and not supported by the evidence in the record. The extreme restrictions were inconsistent with the findings of other medical professionals who examined the Defendant, the findings of medical professionals who reviewed the medical evidence, and with the Plaintiff's reported activities.

## C.    The Residual Functional Capacity Determination

As stated above, the Court concludes that the ALJ's decision to discount the opinions of Dr. Douglas and Dr. Spangler was supported by substantial evidence. For the same reasons and as a result, the Court concludes that the ALJ's RFC determination is supported by substantial evidence. The ALJ properly addressed the limitations imposed on the Plaintiff by his degenerative disc disease and back problems by restricting the Plaintiff to sedentary work–work which requires

14

lifting no more than ten pounds at a time and occasional lifting of files and light tools, along with sitting and occasional standing–with the added condition that the Plaintiff be allowed to sit and stand as necessary for comfort. [Tr. 21]. Further, the ALJ adequately addressed the Plaintiff's mental impairments by limiting him to "simple and some detailed tasks and . . . routine activities requiring limited contacts with the public," with supportive criticism and assistance. [Tr. 21].

Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record.

## V.     CONCLUSION

Based on the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing sedentary work with certain conditions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).